FILED
2012 Apr-04  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERICA PAYNE, o/b/o J.M.B.,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-11-S-1400-S** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Erica Payne commenced this action on April 25, 2011, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge, and denying the claim she asserted on behalf of her son, J.M.B. ("claimant"), for child supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant, who was ten years old at the time of the administrative decision, alleged childhood disability beginning on October 4, 2005, due to attention deficit hyperactivity disorder (ADHD).[1]   Claimant has not asserted that he meets or medically equals any of the listed impairments.  Instead, he asserts that his ADHD-based impairments are functionally equal to the listing.

To functionally equal a listing, the claimant's impairments "must be of listing-level severity; *i.e.,* [they] must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ."  20 C.F.R. § 416.926a(a).  The "domains of functioning" to be evaluated include: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; [and] (vi) Health and physical well-being."  20 C.F.R.  § 416.926a(1)(i)-(vi).  Social Security regulations inform claimants that "marked" limitations in these domains exist

> when your impairment(s) interferes seriously with your ability to
> independently initiate, sustain, or complete activities.  Your day-to-day

---

[1] Claimant's original application for benefits stated that he was disabled due to asthma, ADHD, and an unspecified learning disability.  Tr. 77.  However, during the administrative hearing, claimant's counsel stated that claimant would be alleging disability primarily based on ADHD.  Tr. 417.  He made a similar statement in his brief to this court.  Doc. no. 8 (claimant's brief), at 4 ("Plaintiff alleges disability due to attention deficit hyperactivity disorder.").

functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities.  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R.  § 416.926a(e)(2)(i).  "Extreme" limitations exist

when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked."  "Extreme" limitation is the rating we give to the worst limitations.  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R.  § 416.926a(e)(3)(i).

The ALJ found that claimant had the severe impairment of ADHD,[2] but that he

did not have an impairment or combination of impairments that functionally equaled

one of the listed impairments.  That was because claimant's impairments did not

result in "extreme" limitations in any domain of functioning, or "marked" limitations

in at least two domains of functioning.  Claimant contends that this decision was

neither supported by substantial evidence nor in accordance with applicable legal

---

[2] Tr. 23.

standards.  Specifically, claimant argues that the ALJ improperly considered evidence from claimant's treating psychiatrist and teachers, and that he failed to consider evidence of claimant's bowel and urinary incontinence.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id*.  Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner."  20 C.F.R. § 416.927(e).

Dr. Thomas Vaughn, a psychiatrist, treated claimant from October of 2004 to November of 2008.  On February 3, 2006, Dr. Vaughn completed a "Child Development and Functioning Rating Form" for claimant.  He checked boxes to indicate that claimant experienced a "less than marked" limitation in the domains of health and physical well-being, moving about and manipulating objects, and caring for himself.  However, claimant experienced "marked" limitations in the domains of

acquiring and using information, attending and completing tasks, and interacting and relating to others.  Dr. Vaughn also commented that all of the ratings he had noted on the form would worsen by one level if claimant ceased taking his medication.[3]  Dr. Vaughn made the exact same findings on both August 8, 2007[4] and November 12, 2008.[5]

The ALJ considered Dr. Vaughn's assessments, but he decided not to give them controlling weight.  First, he reasoned that Dr. Vaughn had not presented any evidence or supporting explanation for his opinions.[6]  Next, the ALJ stated that Dr. Vaughn's

> opinion is not consistent with the record as a whole, including his own treatment records.  For example, he reports marked limitation of function in Domains 1 and 2, yet he repeatedly notes that Claimant is dong well (or better) in school and making good (or better) grades. . . . Moreover, his records indicate that on two occasions, he rated Claimant's GAF at 60 and 65, indicative of only mild limitation of function.  Finally, his opinion is inconsistent with the findings of a team of experts who evaluated Claimant at Sparks Clinic.[7]

Third, the ALJ reasoned that Dr. Vaughn was not familiar with other information in claimant's case record, including school records, achievement test scores, and

---

[3] Tr. 281-82.

[4] Tr. 320-21.

[5] Tr. 369-70.

[6] Tr. 26.

[7] Tr. 27.

assessments of claimant's teachers.[8]

Claimant does not directly refute any of those assertions, and, indeed, the record supports the ALJ's conclusions.  It is true that Dr. Vaughn did not offer any written explanation for his assessments; he just checked the blanks on the forms provided to him.  It also is true that Dr. Vaughn's records reflect varying levels of claimant's symptoms.  On October 8, 2004, Dr. Vaughn assessed a GAF score of 60, indicating only moderate symptoms.[9]  Furthermore, Dr. Vaughn's records reveal that claimant reported varying progress in grades and school behavior, with him sometimes doing well and sometimes experiencing behavioral and academic problems.  Dr. Vaughn also noted generally good results from claimant's medication regime, even though the dosage was adjusted from time to time.[10]  While some of these records may support Dr. Vaughn's assessments of disabling impairments, others support the ALJ's decision to reject Dr. Vaughn's opinions.  Additionally, the records from the Sparks Clinic on January 12 and 25, 2005 are inconsistent with Dr. Vaughn's assessments.  During psychological testing performed at the Sparks Clinic, claimant was assessed with an IQ score in the low average range and a GAF of 65, again indicating only moderate symptoms.  During claimant's speech and language

---

[8] *Id.*

[9] Tr. 290.

[10] *See* Tr. 284-90, 322-27, 372-80.

6

evaluation, the examiner noted that his behavior and social skills seemed typical for his age, and that, although he was distracted a few times, it was easy to redirect him to the pertinent task. The occupational therapist noted that with one exception, claimant had no difficulty following directions, and that he needed only a moderate amount of redirection.[11]  Finally, some of claimant's school records contradict Dr. Vaughn's opinions. In first and second grades, claimant did not earn any grade lower than a "C." On standardized testing, claimant generally received results in the low average range nationwide.[12]  Also, Phyllis Lester, claimant's third grade teacher, noted on a Teacher Questionnaire Form, that claimant had serious, daily problems with attending and completing tasks, interacting and relating with others, and caring for himself. However, she attributed those problems to claimant's *refusal* to cooperate with the learning environment, not his *inability* to cooperate. Ms. Lester stated that claimant was capable of being a good student, but his behavior interfered with him making rational decisions. She also stated that claimant did not know right from wrong, had shallow judgment, wanted everything to go his way, and did not fear any consequences of his actions. Ms. Lester's summary statement was:

> This student is average or better if he puts effort and focus on his work. He get[s] caught-up in materialist things. He plays with all the

---

[11] Tr. 166-84.

[12] Tr. 131-37.

objects (dangerous sometime[s]) and material he brings to school each day.  The principal has to search his bookbag and pockets.  Once he enter[s] the classroom (late everyday) he starts bringing out the material (object) and starts passing them out around the classroom.  His language is very inappropriate with the teacher and peers.  He intentionally seeks attention, always.  I feel that this child is capable but has convinced himself that something is wrong with him (hear[s] it from home to[o] much).[13]

Based on all of the above, the court concludes that the ALJ's decision not to fully credit Dr. Vaughn's assessments was based on substantial evidence.  Claimant also points out evidence that is contrary to Dr. Vaughn's opinions, including evidence of several "D"'s and "F"'s in the third and fourth grade;[14] lower scores on national standardized tests in third grade; a statement from his second grade teacher that he had marked impairments in the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others;[15] and a statement by his fourth grade teacher that he had marked limitations in the domain of acquiring and using information, and extreme limitations in the domains of attending and completing tasks and interacting and relating to others.[16]  The ALJ considered all of this evidence, but he was more persuaded by the evidence that indicated the absence of disabling impairments.  Moreover, the presence of evidence conflicting with the

---

[13] Tr. 143-50 (bracketed alterations supplied).

[14] Tr. 399, 408.

[15] Tr. 140-41.

[16] Tr. 366-67.

8

ALJ's decision does not mean that the decision was in error.  The court is not required to determine whether the ALJ's decision is supported by *all* the evidence of record, or even whether the ALJ made the best decision based on all of the evidence.  Instead, the court must only determine whether the ALJ's decision was supported by *substantial* evidence.

Similarly, the court cannot agree with claimant's accusation that the ALJ improperly substituted his own judgment for that of the medical and vocational experts.  The ALJ disagreed with the assessments made by Dr. Vaughn, but he did not do so arbitrarily or without basis.  To the contrary, he provided ample reasoning for rejecting the treating physician's opinions, and his conclusions were supported by substantial evidence of record.

Finally, the court is not persuaded by claimant's argument that the ALJ should have considered claimant's problems with urinary and bowel incontinence as affecting his ability to function in the domains of self care, health and physical well being, and interacting and relating to others.  During the administrative hearing, claimant's attorney stated that his theory of disability was based upon claimant's inability to function in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.  He did not mention the

9

domains of self care and health and physical well being.[17]  Consequently, there was no need for the ALJ to discuss whether claimant's incontinence problems would affect those two domains.  *See Davenport v. Astrue,* 403 Fed. Appx. 352, 354 (11th Cir. 2010).  Further, there is not substantial evidence in the record to support a marked or extreme limitation in the domain of interacting and relating to others as a result of claimant's incontinence.

In summary, the court concludes that the ALJ's decision regarding claimant's disability was supported by substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed to claimant.  The clerk is directed to close this file.

DONE this 4th day of April, 2012.

_____
United States District Judge

---

[17] Tr. 419.